NATIONAL FARMERS BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8199.          Promulgated February 18, 1927.

The Commissioner's disallowance of deductions for alleged worthless debts approved.

*John O. Loeffler, Esq.,* for the petitioner.
*D. D. Shepard, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes for 1919 and 1920, in the amounts of $497.69 and $1,474.88, respectively.

Only that part of the deficiencies is involved which results from the action of the respondent in disallowing deductions claimed on account of certain debts alleged to have been ascertained to be worthless.

FINDINGS OF FACT.

The petitioner is a corporation chartered under the National Banking Laws, with its principal office at Kasson, Minn.

In February, 1918, the petitioner, having some surplus funds on hand, was seeking investments. It was discovered that the Security State Bank of Knox, North Dakota, had certain notes which pur-

ported to be secured by chattel mortgages. One D. N. Ugland, his wife, and his mother were the directors of that bank. Arrangements were made between the two banks through Ugland, representing the Security State Bank of Knox, and through Parkhurst, representing the petitioner, whereby the petitioner purchased the notes and chattel mortgages for the amount of $10,781.71, which was their face value. The notes were endorsed by the Security State Bank of Knox, without recourse. Contemporaneously with the assignment or endorsement of said notes to petitioner, Ugland, his wife, and his mother, as directors of the Security State Bank of Knox, entered into a guaranty agreement wherein they, as individuals, guaranteed the payment of these notes upon maturity. Parkhurst, representing the petitioner, made no investigation with respect to the makers of the respective notes and of the chattel mortgages, but relied entirely upon the written guaranty of the said Ugland, his wife, and his mother. At that time Ugland was considered to be worth in the neighborhood of $400,000 or $500,000, with liabilities greatly less than that amount, and his personal guarantee was considered good security for the payment of the notes.

In or about the month of July, 1918, the petitioner learned through Parkhurst that Ugland had forged all of the notes and chattel mortgages, had forged many other similar notes and mortgages, and had received money therefrom from others.

The petitioner, upon ascertaining that the notes and mortgages were forged and realizing that there might be some delay in the collection on the written guaranty, desired to have the matter adjusted without calling it to the attention of the stockholders, of whom there were a large number owning small quantities of stock, and in order to avoid any complaint upon the part of the bank examiners in connection with holding this claim against Ugland, his wife, and his mother on its books, arrangements were made between Parkhurst, who was president of the petitioner bank, and the board of directors, whereby Parkhurst agreed to pay to the bank the face amount of the notes, viz, $10,781.71, in consideration of the assignment to him of the claim of the petitioner bank against the guarantors of the notes. The claim against the guarantors, in so far as the bank was concerned, was thus converted into cash.

Under the arrangement, however, it was agreed that Parkhurst should file the claim that he had received from the bank and undertake the collection thereof. Meantime, on the discovery of the forgeries, Ugland consented to the appointment of a receiver, and a voluntary receiver was afterwards appointed by the Circuit Court in Fargo. It was agreed that in the event Parkhurst failed to

recover from Ugland the amount he had paid to the bank, the difference was to be paid to him by the bank, and it was also agreed at that time that Parkhurst's salary was to be increased from $3,000 to $5,000 per annum, which was to be paid to him pro rata through the year, with further sums by way of commissions on the sale of real estate and insurance commissions, which additional compensation and commissions were to be paid by the petitioner to Parkhurst until it was definitely determined what the amount of the loss, if any, with respect to the notes and written guaranty would be. As dividends were paid to Parkhurst by the receiver of Ugland, the liability of the petitioner bank to Parkhurst was reduced proportionately.

Parkhurst filed his claim with the receiver, which was allowed in full.

In 1919 the petitioner paid to Parkhurst $1,999.92 by way of additional compensation in compliance with this agreement. In 1920 Parkhurst received the sum of $9,242.92, of which $1,999.92 was by way of additional compensation, $2,015.74 was a dividend from the receiver of Ugland, and the balance was on account of commissions under his agreement with the bank.

When the receiver was appointed for Ugland, it was considered that there would be ample assets to pay the amount of the notes which were a valid claim against Ugland on account of his guaranty. However, as time went on other claims were filed against Ugland so that the total amount of claims aggregated something in excess of $375,000. At the time of the appointment of the receiver the claims aggregated approximately $100,000. By the end of 1920 various developments occurred. Among other things, a tract of land which was considered to be clear of encumbrances was found to have mortgages against it. The mortgages which appeared against the land appeared of record to be satisfied, but it developed that the satisfactions were forged. It was also discovered that other notes which were considered to be assets of Ugland and which came into the possession of the receiver were found to be forged. A drought occurred in the territory in which Ugland's land was situated, which materially reduced the chances of realization of cash from it.

It was not definitely known at the end of 1920 just what amount would be realized by the receiver out of Ugland's assets. It was known, however, that there would not be enough realized to pay the claims in full, and from all the facts known it was considered that only a small part would be recovered. The receiver did not liquidate Ugland's assets until after 1920.

## OPINION.

TRAMMELL: The petitioner claimed deductions in 1919 and 1920 with respect to the notes, as set forth in the findings of fact, as debts ascertained to be worthless and charged off. In our opinion, the loss sustained by the petitioner, if any, was not on account of debts ascertained to be worthless. The petitioner actually received the cash for the notes from Parkhurst and assigned the notes to him. The losses sustained by the petitioner, if any, were represented by the payments made by the petitioner under its agreement with Parkhurst to reimburse him for any loss on account of the notes. During 1919 the petitioner paid to Parkhurst by way of increased salary, for the purpose of reimbursing him, $1,999.92. During this period there was no ascertainment of loss. It appeared then that the assets in the hands of the receiver would probably be sufficient to pay the entire amount. During 1920 the petitioner paid to Parkhurst the amount stated in the foregoing findings of fact, in accordance with its agreement with him, but at that time it was not definitely known what the loss would be, if any. The receiver had assets which were sufficient to pay a portion of the claim, but what portion it was not known.

The guaranty which was assigned to Parkhurst by the bank was the joint obligation of Ugland, his wife, and his mother, who were directors of the Security State Bank of Fargo. There was no testimony as to what the assets and liabilities of Ugland's wife and mother were. They were clearly liable on the guaranty agreement with Ugland, and even if we should find as a fact that Ugland had no assets out of which he could make good his guaranty, we could not find as a fact that the guaranty was worthless in the absence of any evidence as to the financial responsibility of the other guarantors.

In view of the evidence we must hold that the petitioner did not sustain a deductible loss in 1919 or 1920. When it paid out the additional compensation which was in fact a part payment under its agreement with Parkhurst, it was considered by both Parkhurst and the petitioner that the guaranty agreement of Ugland and the other directors of the Security State Bank would be sufficient to protect the petitioner or Parkhurst from any loss, and it was not definitely known whether such guaranty was sufficient at the end of 1920, during which year other payments were made by the petitioner.

*Judgment will be entered for the respondent.*